**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

SONIA MERCADO QUESADA,

      *Plaintiff,*                    **CASE NO.:**

v.

BONITA BAY CLUB, INC.

      *Defendant.*       /

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Sonia Mercado Quesada ("**Plaintiff**") files this action against Defendant Bonita Bay Club, Inc. ("**Defendant**") as follows:

### INTRODUCTION

1. Plaintiff was a capable and self-sufficient administrative assistant throughout her tenure with Defendant. Jeffrey Burgoyne, Assistant Director of Golf Course Operations and Plaintiff's direct supervisor ("**Dir. Burgoyne**"), subjected her to degrading sex-based harassment for nearly the entirety of her employment. She reported the discriminatory treatment she faced and Defendant swiftly fired her. This is an action for discrimination, retaliation, and a hostile work environment in violation of Title VII of the Civil Rights Act and the Florida Civil Rights Act of 1992 ("**FCRA**").

### PARTIES

2. Plaintiff is a resident of Collier County, Florida. At all times material, she was Defendant's employee.

3.  Defendant is a Florida not-for-profit corporation with its principal place of business in Bonita Springs, Florida at 26660 Country Club Drive, Bonita Springs, FL. 34134. It contains a golf course, private country club, and private marina.

4.  Defendant was Plaintiff's employer within the meaning of Title VII and the FCRA at all times relevant to this Complaint. At all times relevant, Defendant had 201 or more employees.

## JURISDICTION AND VENUE

5.  This Court has subject matter jurisdiction for claims arising under Title VII. 28 U.S.C. § 1331.

6.  This Court has supplemental jurisdiction over Plaintiff's FCRA claims pursuant to 28 U.S.C. § 1367 because those claims arise from the same facts and circumstances as Plaintiff's federal claims.

7.  This Court has personal jurisdiction over Defendant because Defendant continuously conducts business within this District.

8.  Venue is proper in this district because Defendant is subject to personal jurisdiction in this District and because the acts complained of herein occurred in this District. 28 U.S.C. § 1391; 42 U.S.C. § 2000e-5(f)(3).

9.  Plaintiff filed a dual-filed Charge of Discrimination with the Equal Employment Opportunity Commission ("**EEOC**") and the Florida Commission on Human Relations ("**FCHR**") on November 28, 2025.

10. Plaintiff received her Notice of Right to Sue letter from the EEOC on March 25, 2026, and files this Complaint within ninety days of receiving her Notice of Right

to Sue Letter. More than 180 days have elapsed since Plaintiff filed her FCHR charge, and the FCHR has not issued a determination. Plaintiff has therefore satisfied all conditions precedent to bringing her Title VII and FCRA claims.

## GENERAL ALLEGATIONS

11. Plaintiff began working as an Administrative Assistant for Defendant in approximately November 2023.

12. In that role, Plaintiff helped Defendant's employees with making elections and changes to insurance benefits, processed invoices and expenses, and was required to maintain data regarding purchase orders and loss run reports. Her job requirements included Microsoft Suite as well as Spanish fluency.

13. Dir. Burgoyne screamed at Plaintiff on a near-daily basis and frequently yelled vulgar profanities at her.

14. Due to the breadth and detail-oriented nature of Plaintiff's work for Defendant, Dir. Burgoyne frequently told her to get approval and clarity from him regarding tasks that arose. However, when she asked him questions, Dir. Burgoyne would begin yelling at her for asking questions.

15. Dir. Burgoyne frequently mocked Plaintiff's English skills. He questioned how long she had lived in the United States, made fun of her accent, pronunciation, and her misunderstanding of certain English. Dir. Burgoyne engaged in this behavior in front of Plaintiff's coworkers at least once per week throughout her employment. He did not engage in similar treatment of male peers.

16. As part of her job duties, Plaintiff would occasionally ride in a golf cart with Dir. Burgoyne to gather information for compiling loss run reports. During these trips, Dir. Burgoyne would intentionally drive the cart in an erratic and unsafe manner, while Plaintiff was riding with him, attempting to frighten her and cause her to fall from the cart. To Plaintiff's knowledge, he did not engage in similar treatment of male peers.

17. Dir. Burgoyne's treatment of Plaintiff was no secret. Numerous peers and members of management personally witnessed his aggressive outbursts at Plaintiff, including during her performance reviews.

18. For example, on January 22, 2024, Dir. Burgoyne yelled at Plaintiff in front of Lucia Zipaper while Zipaper was completing an application. Dir. Burgoyne became agitated, raised his voice, made angry hand gestures toward Plaintiff and accused Plaintiff of not knowing what she was doing. When Plaintiff defended herself, Dir. Burgoyne became angrier.

19. In addition to screaming at Plaintiff in front of her peers and other supervisors, Dir. Burgoyne screamed and talked down to Plaintiff in front of vendors.

20. For example, in or around August 2024, Burgoyne yelled and screamed at Plaintiff in front of one of Defendant's fertilizer vendors. Plaintiff asked him to stop yelling at her in front of other people. The vendor appeared visibly uncomfortable and sympathetic toward Plaintiff.

21. Nearly every day of Plaintiff's employment, Dir. Burgoyne would yell out and refer to Plaintiff as "Slave!" as if it were her first name. He did this in front of other

Defendant supervisors, such as Thomas Volvo (Supervisor-Mechanical) and Andrew Patherson (Supervisor- Golf Course).

22. Dir. Burgoyne often laughed after referring to Plaintiff as his slave.

23. This conduct deeply upset Plaintiff. Approximately ten times a month, she would tell Dir. Burgoyne, "I'm not a slave, my name is Sonia." When she she objected to the conduct, he and began using the term more frequently.

24. On June 20, 2024, Dir. Burgoyne conducted Plaintiff's performance review and yelled at her, telling her that she was horrible at her job and not worthy of her role with Defendant. Dir. Burgoyne caused Plaintiff to cry at work that day.

25. In approximately August 2024, after one of the many instances that Dir. Burgoyne called Plaintiff a slave, she corrected him and responded that she was not a slave but a secretary. Dir. Burgoyne told her that she was his assistant and not his secretary because "if [Plaintiff] were [his] secretary, [she] would be in [his] office with the door closed." Plaintiff and others understood Dir. Burgoyne's comment as sexual and degrading.

26. On another instance, Plaintiff entered Dir. Burgoyne's office to request his signature on a set of papers. His door was wide open and Dir. Burgoyne invited her to come in.

27. When Plaintiff was approximately two to three feet away, she noticed Dir. Burgoyne was staring at pornography on his phone. She saw what looked like a photograph of a woman dressed as a schoolgirl with a white shirt, her breasts out, and on her knees.

28. Dir. Burgoyne was not trying to shield what he was looking at on his phone. He did not appear embarrassed and did not acknowledge that he invited her into the room while he was watching pornography.

29. Dir. Burgoyne knowingly exposed Plaintiff to pornography in the workplace.

30. Plaintiff felt ashamed that she witnessed Dir. Burgoyne looking at pornography. She placed the papers on his desk for his signature and quickly walked out of the room.

31. On October 21, 2024, there was an issue with the employee clock-in time machine. Although this error was not within Plaintiff's control, Dir. Burgoyne began scolding her for entering time incorrectly and accused her of lying to him. Plaintiff began crying at her desk as a result of Dir. Burgoyne's treatment.

32. On February 13, 2025, a Spanish-speaking co-worker named Paulina Cruz requested Plaintiff assist her with translating because of Plaintiff's fluency in Spanish and English. Ms. Cruz needed to speak with Dir. Burgoyne about taking time off due. Dir. Burgoyne requested Plaintiff to ask questions about Ms. Cruz's medical leave request and about how old she was. He then called her old and told her she should consider retirement. Ms. Cruz and Plaintiff took offense to Dir. Burgoyne's questions. Dir. Burgoyne became angry and blamed Plaintiff for Ms. Cruz's reaction, despite her correctly translating comments between the two.

33. On February 27, 2025, Plaintiff learned that an employee improperly reported referring two people to the company in order to receive two separate $500

dollar payments. When Plaintiff informed Dir. Burgoyne of this issue, he told Plaintiff that he would handle it and to refer the employee to him when the payments were asked for.  Plaintiff did so, and was reprimanded by Dir. Burgoyne, who rather than address the issue, questioned *Plaintiff's* job performance.

34. Dir. Burgoyne's aggression towards Plaintiff also manifested in throwing mail and pens at her and slamming mail down on her desk.

35. On at least two occasions, Dir. Burgoyne struck Plaintiff with the thrown pens.

36. On February 28, 2025, Dir. Burgoyne threw mail at her and narrowly avoided hitting her. Enraged,  he sent Plaintiff home for the day. Dir. Burgoyne did not tell Plaintiff that she was terminated, and Plaintiff understood that she had merely been sent home for the remainder of the day.

37. Plaintiff returned to work on March 3, 2025. Dir. Burgoyne told her "I want you fired. You don't work here anyway."

38. Plaintiff immediately called Human Resources Director Peggy Taylor ("**HR Dir. Taylor**"). Plaintiff reported the discrimination, inclusive of the demeaning comments, throwing things at her, and calling her a slave.

39. Plaintiff did so with unease, as Dir. Burgoyne frequently told Plaintiff about his close and long-standing personal friendship with HR Dir. Taylor.

40. But Dir. Burgoyne did not leave this remark open to interpretation: Dir. Burgoyne threatened Plaintiff that if she ever reported him to Dir. Taylor, it would result in Plaintiff's termination.

41. HR Dir. Taylor advised Plaintiff to send her an e-mail memorializing Dir. Burgoyne's treatment and told Plaintiff that she would investigate the complaint..

42. Plaintiff wrote the email and inquired about whether she could return to work.

43. A week after Plaintiff's complaint about discrimination on approximately March 10, 2025, HR Dir. Taylor called Plaintiff and advised her that Defendant was terminating her.

44. Plaintiff asked HR Dir. Taylor why she was being terminated.  Dir. Taylor explained it was because "you don't have proof" of Dir. Burgoyne's discriminatory harassment.

45. Plaintiff asked HR Dir. Taylor for documentation reflecting that Defendant terminated her, but Defendant refused to provide her with any.

### COUNT I- RETALIATION IN VIOLATION OF TITLE VII

46. Plaintiff repeats and realleges Paragraphs 1-45 as if fully set forth herein.

47. Plaintiff is a member of a protected class as defined by Title VII: she is a female.

48. Plaintiff made a complaint based on her protected status.

49. Plaintiff engaged in protected activity when she objected to and reported sexually discriminatory and harassing conduct that she reasonably believed violated Title VII.

50. But for her sex and sex-based complaints of discrimination, Plaintiff would have been treated differently by Defendant.

8

51. Plaintiff's report of sex-based discriminatory treatment constitutes protected activity within the meaning of Title VII.

52. Defendant took adverse employment actions against Plaintiff, when among other things, Defendant escalated its discriminatory treatment after she objected to it and terminated her approximately seven days after she reported discriminatory treatment to Defendant's HR Director.

53. Defendant acted with malice or with reckless indifference to Plaintiff's rights. Further, Defendant's management with decision-making capabilities (including Dir. Burgoyne and HR Dir. Taylor) knowingly countenanced or approved of the retaliation against Plaintiff for her protected activity.

54. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered, and will continue to suffer, damages including emotional distress, inconveniences, loss of income and benefits, humiliation, and other indignities, in amount to be determined at trial.

## COUNT II – RETALIATION IN VIOLATION OF THE FCRA

55. Plaintiff repeats and realleges Paragraphs 1-45 as if fully set forth herein.

56. Plaintiff is a member of a protected class under the FCRA: She is a female.

57. Plaintiff made a complaint based on her protected status.

58. Plaintiff engaged in protected activity when she objected to and reported sexually discriminatory and harassing conduct that she reasonably believed violated the FCRA.

9

59. But for Plaintiff's sex and complaints regarding sex-based discrimination, Plaintiff would have been treated differently by Defendant.

60. Defendant took adverse employment actions against Plaintiff, when among other things, Defendant escalated its discriminatory treatment after she objected to it and terminated her approximately seven days after she reported discriminatory treatment to Defendant's HR Director.

61. Defendant acted with malice or with reckless indifference to Plaintiff's rights. Further, Defendant's management with decision-making capabilities (via Dir. Burgoyne and HR Dir. Taylor) knowingly countenanced or approved of the retaliation against Plaintiff for her protected activity.

62. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages including emotional distress, inconveniences, loss of income and benefits, humiliation, and other indignities, in an amount to be determined at trial.

## COUNT III – VIOLATION OF TITLE VII
### (HOSTILE WORK ENVIRONMENT)

63. Plaintiff repeats and re-alleges Paragraphs 1-45 as if fully set forth herein.

64. Plaintiff, a female, is a member of a protected class as defined by Title VII.

65. Title VII prohibits Defendant from discriminating against Plaintiff in the terms and conditions of her employment because of her sex.

66. Plaintiff was subjected to unwelcome harassment because of her sex. But for Plaintiff's sex, she would not have been subjected to the sex-based comments,

conduct, and humiliating treatment described herein. Plaintiff did not welcome the offensive acts and statements made by Dir. Burgoyne.

67. Dir. Burgoyne's conduct and Defendant's failure to adequately address or correct it was severe to a degree that it materially altered the terms or conditions of Plaintiff's employment.

68. Dir. Burgoyne's conduct and Defendant's failure to adequately address or correct it was severe or pervasive to a degree that it materially altered the terms or conditions of Plaintiff's employment.

69. Among other facts demonstrating that Defendant's work environment was hostile towards Plaintiff, the following occurred:

    a. Dir. Burgoyne told Plaintiff that she was his assistant and not his secretary because "if [Plaintiff] were [his] secretary, [she] would be in [his] office with the door closed"; Plaintiff understood this comment as sexual aggressive and discriminatory;

    b. Dir. Burgoyne invited Plaintiff into his office while he was viewing pornography on his phone;

    c. Dir Burgoyne frequently yelled at Plaintiff in front of male colleagues and vendors and referred to her as his "slave";

    d. Dir. Burgoyne would intentionally drive a golf cart in an erratic and unsafe manner while Plaintiff was riding with him;

    e. He slammed and threw mail letters and pens at her, occasionally striking her with the objects he threw; and

11

    f.   Defendant dismissed Plaintiff's reporting of Dir. Burgoyne's conduct and fired her.

70. Defendant knew or should have known of the hostile work environment because of sex and failed to take prompt and effective remedial action.

71. Defendant is liable for the conduct of Dir. Burgoyne because he was Plaintiff's direct supervisor and exercised authority over the terms and conditions of plaintiff's employment.

72. Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights.

73. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered damages, including lost wages, lost benefits, emotional distress, inconvenience, humiliation, and other damages in an amount to be determined at trial.

### COUNT IV – VIOLATION OF TITLE VII
### (HOSTILE WORK ENVIRONMENT)

74. Plaintiff repeats and re-alleges Paragraphs 1-45 as if fully set forth herein.

75. Plaintiff, a female, is a member of a protected class as defined by the FCRA.

76. The FCRA prohibits Defendant from discriminating against Plaintiff in the terms and conditions of her employment because of her sex.

77. Plaintiff was subjected to unwelcome harassment because of her sex. But for Plaintiff's sex, she would not have been subjected to the sex-based comments, conduct, and humiliating treatment described herein. Plaintiff did not welcome the offensive acts and statements made by Dir. Burgoyne.

78. Dir. Burgoyne's conduct and Defendant's failure to adequately address or correct it was severe to a degree that it materially altered the terms or conditions of Plaintiff's employment.

79. Dir. Burgoyne's conduct and Defendant's failure to adequately address or correct it was severe or pervasive to a degree that it materially altered the terms or conditions of Plaintiff's employment.

80. Among other facts demonstrating that Defendant's work environment was hostile towards Plaintiff, the following occurred:

   a. Dir. Burgoyne told Plaintiff that she was his assistant and not his secretary because "if [Plaintiff] were [his] secretary, [she] would be in [his] office with the door closed"; Plaintiff understood this comment as sexual aggressive and discriminatory;

   b. Dir. Burgoyne invited Plaintiff into his office while he was viewing pornography on his phone;

   c. Dir Burgoyne frequently yelled at Plaintiff in front of male colleagues and vendors and referred to her as his "slave";

   d. Dir. Burgoyne would intentionally drive a golf cart in an erratic and unsafe manner while Plaintiff was riding with him;

   e. He slammed and threw mail letters and pens at her, occasionally striking her with the objects he threw; and

   f. Defendant dismissed Plaintiff's reporting of Dir. Burgoyne's conduct and fired her.

81. Defendant knew or should have known of the hostile work environment because of sex and failed to take prompt and effective remedial action.

82. Defendant is liable for the conduct of Dir. Burgoyne because he was Plaintiff's direct supervisor and exercised authority over the terms and conditions of plaintiff's employment.

83. Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights.

84. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered damages, including lost wages, lost benefits, emotional distress, inconvenience, humiliation, and other damages in an amount to be determined at trial.

## COUNT V – DISCRIMINATION IN VIOLATION OF TITLE VII

85. Plaintiff repeats and re-alleges Paragraphs 1-45 as if fully set forth herein.

86. Plaintiff, a female, is a member of a protected class as defined by Title VII.

87. Plaintiff suffered adverse employment actions when she was repeatedly mistreated by her direct superior and ultimately terminated because of her gender.

88. But for Plaintiff's sex, Defendant would not have engaged in such conduct.

89. Defendant acted with malice or with reckless indifference to Plaintiff's rights. Further, Defendant's management knowingly countenanced or approved of discrimination, as exhibited by the baseless termination of Plaintiff.

14

90. As a proximate and direct result of Defendant's conduct, Plaintiff has suffered, and will continue to suffer, damages including emotional distress, inconveniences, loss of income and benefits, humiliation, and other indignities.

91. Accordingly, Plaintiff is entitled to backpay and lost benefits and compensatory and punitive damages to the fullest extent permitted by Title VII.

## COUNT VI – DISCRIMINATION IN VIOLATION OF THE FCRA

92. Plaintiff repeats and re-alleges Paragraphs 1-45 as if fully set forth herein.

93. Plaintiff, a female, is a member of a protected class as defined by the FCRA.

94. Plaintiff suffered adverse employment actions when she was repeatedly mistreated by her direct superior and ultimately terminated because of her gender.

95. But for Plaintiff's sex, Defendant would not have engaged in such conduct.

96. Defendant acted with malice or with reckless indifference to Plaintiff's rights. Further, Defendant's management knowingly countenanced or approved of discrimination, as exhibited by the baseless termination of Plaintiff.

97. As a proximate and direct result of Defendant's conduct, Plaintiff has suffered, and will continue to suffer, damages including emotional distress, inconveniences, loss of income and benefits, humiliation, and other indignities.

98. Accordingly, Plaintiff is entitled to backpay and lost benefits and compensatory and punitive damages to the fullest extent permitted by the FCRA.

## REQUEST FOR RELIEF

Plaintiff respectfully requests the Court enter judgment in her favor as follows:

A. Backpay and lost benefits resulting from Defendant's violations of Title VII and the FCRA to the fullest extent permitted by law;

B. Compensatory damages resulting from Defendant's respective violations of Title VII and the FCRA to the fullest extent permitted by law;

C. Punitive damages to punish Defendant's respective violations of Title VII and the FCRA to the fullest extent permitted by law;

D. Pre-judgment and post-judgment interest;

E. An award of costs and reasonable attorneys' fees; and

F. Such other relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all claims.

Dated: June 1, 2026

Respectfully submitted,

By: */s/ Christopher S. Prater*

**Christopher S. Prater**
Florida Bar No.: 105488
cprater@pollardllc.com
*LEAD COUNSEL*

**Michael G. Green, II**
Florida Bar No. 60859
mgreen@pollardllc.com

**Jonathan E. Pollard**
Florida Bar No.: 83613
jpollard@pollardllc.com

**Pollard PLLC**
500 East Broward Blvd., Ste. 950
Fort Lauderdale, FL 33394
Telephone: 954-332-2380
Facsimile: 866-594-5731
*Attorneys for Plaintiff*

16